**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

ZUMBROTA LIVESTOCK AUCTION MARKET,

Plaintiff,

v.

COMMUNITY SAVINGS BANK,

Defendant.

Civil No. 00-1472 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

Ben G. Campbell and Raphael T. Wallander, RIDER, BENNETT, EGAN & ARUNDEL, 2000 Metropolitan Center, 333 South Seventh Street, Minneapolis, MN 55402, for plaintiff.

Janel E. Pozarnsky LaBoda, BRIGGS & MORGAN, 2400 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, and Jon P. Sullivan, DICKINSON, MACKAMAN, TYLER & HAGEN, 699 Walnut Street, Suite 1600, Des Moines, IA 50309, for defendant.

Plaintiff Zumbrota Livestock Auction Market brings claims of violation of Iowa Stat. § 554.4302, fraud, and breach of contract against defendant Community Savings Bank ("CSB"). This matter is before the Court on CSB's motion to dismiss or transfer venue. For the reasons set forth below, CSB's motion is granted.

2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. DEC 07 2000
DEPUTY CLERK

## BACKGROUND

### A. Facts Underlying Plaintiff's Complaint

According to the allegations in plaintiff's complaint, plaintiff, a Minnesota corporation located in Zumbrota, MN, conducts weekly livestock auctions. In 1995 a company called Thurn-Hines Livestock ("Thurn-Hines") purchased some livestock from plaintiff. Thurn-Hines maintains an account at CSB, a small Iowa bank with its principal place of business in Edgewood, Iowa. To pay for the livestock, Thurn-Hines wrote three checks to plaintiff from its CSB account. After learning that two of the checks had been returned due to insufficient funds, two employees of plaintiff traveled to Edgewood to present the third check to CSB. Upon presenting the check for payment, these employees, Donald and Patricia Webster, were informed that they needed to meet with one of the bank's officers. Plaintiff alleges that at this meeting, defendant's president and CEO informed them that the check would be paid upon the bank's opening the following Monday, October 23, 1995. That Monday, another of plaintiff's employees traveled to Iowa to present the other two checks for payment. Plaintiff alleges that it was anticipated that these other checks would be paid along with the first. Plaintiff left the checks with defendant and received a receipt for them. None of the checks were paid that day, and on October 31, 1995, the checks were returned to plaintiff marked "Return Item – Stop Payment."

**B. Facts Relevant to Personal Jurisdiction**

CSB is chartered by the state of Iowa and has three other branch offices, all of which are located in Iowa. CSB owns some government bonds on Minnesota property as part of its investment activities. Other than these bonds, CSB owns no property in Minnesota. CSB has a total of forty employees, eighteen of whom work at the Edgewood branch. It is not now and never has been licensed or authorized to do business in the state of Minnesota, and has no registered agent for service of process in this state. Of its over 10,000 customers, nineteen live in Minnesota, and the only evidence in the record concerning these customers indicates that they are former Iowa residents who chose to maintain their accounts after moving to Minnesota. CSB has never advertised on Minnesota radio or television stations, nor has it placed ads in Minnesota newspapers.

CSB maintains a website at <u>www.csbiowa.com</u>. At this website, existing customers of CSB can access their account information and apply for loans. In order to open an account at CSB, however, it is necessary to go to one of its Iowa offices. While plaintiff asserts that anyone can apply for a loan via CSB's website, the very first field on the loan application web page calls for the applicant's account number. CSB's website also offers a service called "WOW Online Trading," which allows anyone to open an online brokerage account. The website states that securities are offered through Stockwalk.com, and invites viewers to apply to Stockwalk.com either by filling out an online application form or by mailing an application to Stockwalk.com, which is located in Minnesota. Since November 1999, when CSB began offering this service, approximately thirty individuals have applied for an online account, none of whom are

from Minnesota, and CSB has earned approximately $320.00 through its link to Stockwalk.com.

## ANALYSIS

### A. Standard of Review

Defendant moves to dismiss this action on the basis that the Court lacks personal jurisdiction over it. To survive a motion to dismiss for lack of personal jurisdiction, plaintiff need only establish a prima facie case of personal jurisdiction. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). For the purposes of the prima facie showing, all facts must be viewed in a light most favorable to the nonmoving party and all factual conflicts must be resolved in that party's favor. *See Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

The analysis of personal jurisdiction requires two inquiries: first, a determination of whether the exercise of jurisdiction is proper under the forum state's long-arm statute, and second, a determination of whether the exercise of jurisdiction comports with due process. *See Dakota Indus.*, 946 F.2d at 1387-88. Minnesota's long-arm statute, Minn. Stat. § 543.19, extends jurisdiction to the fullest extent permitted by the federal Constitution. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.* 950 F.2d 526, 528

(8th Cir. 1991). The only question, therefore, is whether due process permits the exercise of personal jurisdiction over defendant in this case.

To assert personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). To determine whether the defendant has such minimum contacts, courts look to three primary factors: 1) the nature and quality of the contacts with the forum state; 2) the quantity of the contacts with the forum state; and 3) the relation of the cause of action to the contacts. *See Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). In addition to these considerations, courts also look to two secondary factors: 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties.

The exercise of jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum is commonly called "general jurisdiction." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). Where the assertion of jurisdiction in a particular case is possible because the case arises out of the defendant's contacts with the forum, the state is said to be exercising "specific jurisdiction." *See id.* at 414 n.8. For the assertion of general jurisdiction over a defendant to be proper, the defendant's contacts with the forum must be "continuous and systematic," *see id.* at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)), and there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, so as to ensure that a

defendant will not be haled into court solely as a result of "random," "fortuitous," or "attenuated" contacts, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

**B. General Jurisdiction**

Plaintiff contends that the presence of CSB customers in Minnesota, as well as CSB's connection with Stockwalk.com, constitute continuous and systematic contacts with Minnesota sufficient to support the exercise of personal jurisdiction over CSB. Plaintiff relies heavily on a case from the Third Circuit, *Provident National Bank v. California Federal Savings & Loan Association*, for the proposition that the presence of even a very small percentage of a bank's depositors and outstanding loan accounts in a state may support the exercise of jurisdiction because these types of accounts are the "bread and butter of [a bank's] daily business." 819 F.2d 434, 438 (3d Cir. 1987). *Provident National* will not support the weight plaintiff attempts to place on it, however. The Third Circuit did not find jurisdiction solely on the basis of the presence of some account holders in the forum state. The court also relied on the bank's maintenance of an account in the forum state, through which it conducted business every business day, *see id.*, and it approved the trial court's finding that the defendant's failure to comply with discovery constituted an admission that it had engaged in continuous business activity in the forum, *see id.* Neither of these factors are present here; there simply is no purposeful, daily contact between CSB and Minnesota like the bank account in *Provident National*, and there certainly has been no admission that CSB engages in continuous business

activity in this state. Moreover, while *Provident National* does not explain how the bank came to have account holders in the forum state, CSB has offered uncontradicted evidence that the only reason it has account holders in Minnesota is that its Iowa customers sometimes move here. It is well settled that the unilateral activity of third persons claiming some relationship with the defendant is insufficient to establish contact between the defendant and the forum, *see Burger King*, 471 U.S. at 474-75, and the presence of nineteen customers out of more than ten thousand, where those nineteen moved here of their own accord, cannot be considered a continuous and systematic contact with this state.

Plaintiff also points to CSB's website. Because the website is primarily dedicated to providing services for CSB's existing customers, plaintiff relies on the online brokerage account service CSB offers.[1] Establishing a channel for providing services to customers in a forum state via the Internet can indicate a defendant's intent to serve the market in the forum. *See State v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 719 (Minn. Ct. App. 1997). There is no evidence that any Minnesota resident has ever taken advantage of CSB's online brokerage account service, however. Moreover, the cause of action in *Granite Gate Resorts* arose out of the defendant's operation of its website. *See*

[1] As noted above, plaintiff also argues that it is possible for anyone to apply for a loan from CSB without ever setting foot in Iowa. Although, for the purposes of this motion, the Court must resolve all factual disputes in plaintiff's favor, the Court does not believe there is a factual dispute here to resolve. The online loan application clearly requires the entry of an account number, a fact that plaintiff does not attempt to explain. Even if plaintiff's assertion is correct, however, the fact that it may be possible for non-customers to apply for loans does not support the exercise of general jurisdiction in this case. Other than the fact that this website may be accessed in Minnesota, CSB does nothing to attract business in Minnesota. While such a solicitation of business over the Internet may in some cases be sufficient to support specific jurisdiction, plaintiff cites no case in which it was sufficient to establish general jurisdiction.

*id.* at 720. Such is not the case here. The mere fact that it is possible for a Minnesota resident to open an online brokerage account through CSB's website is simply insufficient to support the exercise of jurisdiction over CSB in a case wholly unrelated to the website.

Plaintiff also attempts to characterize Stockwalk.com, which is located in Minnesota, as defendant's "agent." There is no evidence in the record to support such an inference, however. While plaintiff argues that the website implies that Stockwalk.com is CSB's agent because the site asks customers to send an application "to us," the site actually states, "you can complete [an application] and mail it to Stockwalk.com. . . . Mail it to us: Stockwalk.com." Viewing this contact in the light most favorable to plaintiff, CSB's offer of an online brokerage account service appears at best to be merely a minor, incidental part of its business, and the fact that Stockwalk.com happens to be located in Minnesota does not indicate any intent on CSB's part to conduct systematic and continuous business activities here.

Finally, plaintiff notes some other, minor contacts with Minnesota, such as CSB's ownership of bonds on Minnesota property, and the fact that CSB issues credit and automated teller machine cards that could be used in Minnesota. CSB's ownership of the bonds is merely a passive investment that does not add appreciably to CSB's Minnesota contacts, and the latter, hypothetical contact is the very definition of "random," "attenuated," and "fortuitous." As noted, CSB does not advertise in this state and does not target Minnesota customers. Plaintiff's speculation that some of CSB's customers might use their CSB-issued credit and automated teller machine cards in Minnesota is

simply insufficient to establish purposeful, systematic, and continuous contacts between CSB and Minnesota. Taken as a whole, therefore, CSB's contacts with Minnesota are so minor that the Court is constrained to conclude that it may not assert general jurisdiction over CSB.

### C. Specific Jurisdiction

Plaintiff argues that the Court has specific jurisdiction over CSB because CSB intentionally defrauded a Minnesota resident. Where jurisdiction is premised on such a theory, however, the defendant's initiation of the transaction at issue is considered a "crucial factor" supporting the exercise of jurisdiction. *St. Paul Fire & Marine Ins. Co. v. Umatilla Elec. Coop. Ass'n*, Civ. Nos. 4-92-555 to 560 and 3-92-388 to 389, 1992 WL 360117, at *3 (D. Minn. Nov. 19, 1992) (quoting *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 296 (Minn. 1978)); *see also Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (noting that the defendant was the aggressor in the relationship); *Kopperud v. Agers*, 312 N.W.2d 443, 445 (Minn. 1981) (finding that while the defendant's direct contacts with the forum were limited, "he was instrumental in setting in motion the fraudulent scheme and in keeping it going"). Here, plaintiff is not a customer of CSB, and CSB did nothing to create a relationship with plaintiff. Instead, CSB became a party to the transaction underlying this case solely because one of plaintiff's creditors maintains an account at CSB and happened to write checks to plaintiff, a Minnesota resident. Under these circumstances, the Court concludes that CSB's activities cannot be considered purposefully directed at a resident of

this state so as to give rise to specific jurisdiction. Thus, having found that the nature, quality, and quantity of CSB's contacts with Minnesota are insufficient to establish either general or specific jurisdiction, the Court grants CSB's motion to dismiss.

**ORDER**

Based on the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion to dismiss or transfer [Docket No. 3] is **GRANTED**, and plaintiff's complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 7, 2000
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEALNO.CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd